UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MICROSOFT CORPORATION,           :
                                 :
          Plaintiff,             :    No. 4:CV-04-2567
                                 :
     vs.                         :    Complaint Filed 11/29/04
                                 :
MASTER COMPUTER, INC., a         :    (Judge Muir)
Pennsylvania corporation, and    :
SUNG KAO a/k/a RICK KAO,         :
an individual,                   :
                                 :
          Defendants             :

**ORDER**

October 12, 2005

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On November 29, 2004, Plaintiff Microsoft Corporation, Inc.
(hereinafter "Microsoft"), initiated this action by filing a
complaint containing six counts.  The Defendants are an
individual named Sung Kao, who is also known as Rick Kao,
(hereinafter "Kao") and the company he owns and operates in State
College, Pennsylvania, known as Master Computer, Inc.
(hereinafter "Master Computer").  All of the claims in
Microsoft's complaint relate to Kao's allegedly unauthorized
distribution of counterfeit Microsoft computer software.  The
computer software at issue is subject to a copyright and
trademarks owned by Microsoft.

On September 1, 2005, Microsoft filed a motion for summary
judgment accompanied by a statement of undisputed material facts,

a supporting brief, and exhibits.  On September 16, 2005, Kao
filed an opposing memorandum, exhibits, and a response to
Microsoft's statement of material facts.  The time allowed for
Microsoft to file a reply brief expired on October 3, 2005, and
to this date no such brief was filed.  Microsoft's motion for
summary judgment is ripe for disposition.

Summary judgment is appropriate only when there is no
genuine issue of material fact which is unresolved and the moving
party is entitled to a judgment as a matter of law. Fed. R. Civ.
P. 56(c).  Summary judgment should not be granted when there is a
disagreement about the facts or the proper inferences which a
fact finder could draw from them. Peterson v. Lehigh Valley Dist.
Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating
the absence of a genuine issue of material fact. Celotex
Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be
met by the moving party pointing out to the court that there is
an absence of evidence to support an essential element as to
which the non-moving party will bear the burden of proof at
trial. Id. at 325.

"When a motion for summary judgment is made and supported as
provided in ...[Rule 56], an adverse party may not rest upon mere
allegations or denials of the adverse party's pleading...."  Fed.

R. Civ. P. 56(e).  Rule 56 provides that, where such a motion is
made and properly supported, the adverse party must show by
affidavits, pleadings, depositions, answers to interrogatories,
and admissions on file that there is a genuine issue for trial.
Fed. R. Civ. P. 56(e).  The United States Supreme Court has
commented that this requirement is tantamount to the non-moving
party making a sufficient showing as to the essential elements of
their case that a reasonable jury could find in its favor.
Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986).

When addressing a motion for such a judgment, our inquiry
focuses on "whether the evidence presents a sufficient
disagreement to require submission to the jury or whether it is
so one-sided that one party must prevail as a matter of law."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)
(emphasis added).

As summarized by the Advisory Committee On Civil Rules,
"[t]he very mission of the summary judgment procedure is to
pierce the pleadings and to assess the proof in order to see
whether there is a genuine need for trial." Fed. R. Civ. P. 56
advisory committee note to 1963 Amendment.

The evidentiary materials submitted to us confirm that the
following facts are undisputed.

Microsoft develops, advertises, distributes and licenses computer software programs.  Microsoft software is distributed in all fifty states of the United States of America and throughout the world.

Microsoft's copyright to its "Windows 2000 Professional" software was registered with the United States Copyright Office in compliance with the Copyright Revision Act of 1976 (17 U.S.C. § 101, *et seq.*) and Copyright Office regulations.  The copyright was assigned registration number TX 5-036-267.  Microsoft has been, and still is, the sole owner of all rights, title and interest in the copyright and Certificate of Registration for its "Windows 2000 Professional" software.

Microsoft is the owner of valid, federally-registered trademarks or service marks, or both, in and to the following: 1) Trademark and Service Mark Registration No. 1,200,236 ("Microsoft") for computer programs and computer programming services; 2) Trademark Registration No. 1,256,083 ("Microsoft") for computer hardware and software manuals, newsletters, and computer documentation; 3) Trademark Registration No. 1,872,264 ("Windows") for computer programs and manuals sold as a unit; 4) Trademark Registration No. 1,815,350 (Colored Windows Flag Logo) for computers, computer peripherals, and computer programs and manuals sold as a unit; and 5) Trademark Registration No.

4

1,816,354 (Windows Flag Logo) for computers, computer
peripherals, and computer programs and manuals sold as a unit.
At all relevant times Microsoft has been the sole owner of all
rights, title, and interest in, and to, those trademarks, service
marks, and registrations.  Although there are five different
trademark registrations at issue here, because the first and
second both relate to the term "Microsoft," there are actually
only four registered marks relevant to this case.

Master Computer is a Pennsylvania corporation in the
business of building new computer systems, some of which are sold
with Microsoft software installed onto the hard disk drives.  Kao
started Master Computer in 1987 and he receives his salary from
the business.  He is the company's primary officer, sole owner,
and sole shareholder.

As the sole owner and operator of the business, Kao has the
right and ability to supervise the employees of Master Computer,
and he is the only person with the authority to hire and fire
employees.  Koa is responsible for Master Computer's overall
operation and he oversees the day-to-day operation of the
business.

Koa selects Master Computer's vendors and is responsible for
acquiring purported Microsoft software and hardware from master
Computer's suppliers.  Kao personally assembles the computer

systems distributed by Master Computer, including affixing Certificate of Authenticity labels onto the computers and installing software onto those computers.

In October of 2003, an investigator contacted Master Computer and placed an order with an individual who identified himself as "Rick" for a computer system with Microsoft Windows 2000 Professional (hereinafter "Windows 2000 Pro") software installed.  The Defendants distributed to the investigator a computer system with an infringing copy of Windows 2000 Pro software installed on the hard disk drive.  The computer was distributed with a Windows 2000 Pro Certificate of Authenticity label affixed to the system.  The label was subsequently identified as one that had been stolen.

Microsoft packages and distributes its software programs with associated user manuals, Certificates of Authenticity, end user license agreements, and other documentation.  To help ensure that computer system dealers, such as Master Computers, are distributing authorized copies of Microsoft software on their computers, Microsoft requires that any installed copy of a software program be distributed with a corresponding authorized Microsoft CD-ROM containing the program, and a Certificate of Authenticity or a Certificate of Authenticity label.  This practice helps prevent would-be infringers from taking one CD-ROM

of Microsoft software, which was licensed for use only on a single computer, and copying it onto numerous systems which they then sell to customers.

The computer system sold to the investigator was not distributed with the requisite legitimate Microsoft Windows 2000 Pro CD-ROM or end user license agreement.  The Defendants are not authorized to copy and distribute Microsoft software programs on computer systems without also obtaining and distributing the software components, which include the appropriate CD-ROM's.

In two letters dated February 27, 2004, Microsoft notified the Defendants that they had infringed Microsoft's copyright and trademarks by distributing a computer with an infringing copy of Windows 2000 Pro software installed and a stolen Windows 2000 Pro Certificate of Authenticity label.  The reference line in each letter requested the Defendants to "Cease and Desist" certain practices.  In the letters Microsoft informed the Defendants of the proper manner to distribute Microsoft software and of the dangers associated with distributing Certificate of Authenticity labels.  The Defendants received the two letters dated February 27, 2004.

In October of 2004, the Defendants distributed to an investigator counterfeit Windows 2000 Pro Certificate of

Authenticity labels.  An individual who identified himself as Rick took the order from the investigator.

The legitimate function of a Certificate of Authenticity label is to help a customer verify whether he or she has obtained genuine Microsoft software, similar to the way that an appraisal certificate is used to authenticate a diamond.  There is no legitimate reason to distribute a Certificate of Authenticity label separate from the software program which it was intended to authenticate.

Microsoft has direct relationships with several large distributors to distribute Microsoft software to system builders and software resellers.  Microsoft maintains a list of these authorized distributors on its internet home page.  Through that page, an Anti-Piracy telephone hotline, and a variety of mass mailings, Microsoft directs system builders and resellers to the authorized dealers as assured sources of genuine Microsoft software.

Although the Defendants learned "a long time ago" that Microsoft had authorized distributors of Microsoft software, the Defendants chose to deal primarily in purported Microsoft software components of unknown origin which they acquired from other sources.  The Defendants acquired stand alone Certificate of Authenticity labels and Microsoft software from vendors which

they knew were not authorized distributors of Microsoft software.
The Defendants selected their vendors based on who offered the
best price.  The Defendants acquired stand alone Certificate of
Authenticity labels, rather than complete, legitimate packages of
Microsoft software, to maximize their profits.

The Defendants admit that they installed unauthorized copies
of Microsoft software programs onto computer systems using a
single installation CD-ROM, affixed to those systems suspect
separately-acquired Certificate of Authenticity labels, and then
distributed the systems to their customers without the
accompanying CD-ROM.  The Defendants admit that they continued
their infringing business practices "a couple of months" after
reading Microsoft's cease and desist letters in order to make
more profit.

Based on those facts, Microsoft argues that it is entitled
to summary judgment on the claims in its complaint.  Before
considering the merits of Microsoft's arguments, we briefly
recount the claims set forth and relief sought in the complaint.
The following claims have been asserted in Microsoft's complaint:
1) Copyright infringement; 2) Trademark infringement; 3) False
designation of origin, false description, and false
representation of Microsoft packaging; and 4) unfair competition
based on Pennsylvania common law.  Microsoft seeks a judgment

providing for injunctive relief; an accounting of and trust to hold the Defendants' illegal profits; money damages; and Microsoft's costs and reasonable attorneys' fees incurred by it in prosecuting this action.  In the documents filed by Microsoft in support of its summary judgment motion, Microsoft specifically requests damages in the amount of $430,000.00.

Turning now to the merits of Microsoft's summary judgment motion, we first consider whether Microsoft is entitled to summary judgment with respect to the Defendants' liability on any or all of its causes of action.

Courts have consistently held that in order to prevail on a claim of copyright infringement, "a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 203 (3d Cir. 2005)(quoting Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir.2002)).

With respect to the first element, the Court of Appeals for the Third Circuit has ruled that "[c]ertificates of registration issued by the U.S. Copyright Office constitute prima facie evidence of the validity and ownership of the material. Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 291 (3d Cir. 1991)(citing Andrien v. Southern Ocean County Chamber of

Commerce, 927 F.2d 132, 134 (3d Cir.1991); Williams Electronics,
Inc. v. Artic International, Inc., 685 F.2d 870, 873 (3d
Cir.1982)).  By submitting all of the pertinent certificates of
registration, Microsoft has fulfilled that element.[1]

The undisputed material facts set forth above confirm that
Microsoft has also proven the second element.  Kao unlawfully
obtained and resold unauthorized copies of Microsoft's "Windows
2000 Professional" software, which were at all relevant times
subject to Microsoft's copyright.  Those actions render the
Defendants liable to Microsoft on its copyright claim as a matter
of law.

The next claim to consider is the trademark infringement
cause of action relating to Microsoft's four trademarks.  In
order to prove such a claim, Microsoft is required to prove the
following: (1) it owns the marks at issue; (2) the marks are
valid and legally protectable; and (3) the Defendants' use of the
marks to identify goods or services is likely to create
confusion. Checkpoint Systems, Inc. v. Check Point Software
Technologies, Inc., 269 F.3d 270, 279 (3d Cir. 2001)(citing

---

1.  Microsoft requests us to take judicial notice of the validity
of its trademarks and copyright registrations.  The Defendants
have not presented any record evidence to dispute the validity of
those registrations.  Therefore, it is not necessary for us to
take judicial notice of them.

Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 437-38 (3d Cir.2000)).

None of the material facts relating to Microsoft's Lanham Act claim are in dispute.  Microsoft registered each of the trademarks, the computer components and software distributed by the Defendants contained those marks, and the marks distributed by the Defendants were likely to create confusion because they were in fact identical to Microsoft's protected marks.

Those same facts establish Microsoft's entitlement to recover on the false designation claim in count three and the state-law unfair competition claim in count four. See Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F. Supp. 1035, 1039 (D.N.J. 1990)(observing that plaintiff must prove same elements to establish either federal or common law trademark infringement and that identical facts would support common law unfair competition claim and false designation of origin claim under federal law); J & J Snack Foods Corp. v. Nestle USA, Inc., 149 F. Supp.2d 136, 157 (D.N.J. 2001)(same); Pa. State Univ. v. Univ. Orthopedics, Inc., 706 A. 2d 863, 870 (Pa. Super. 1998).

The Defendants' only argument with respect to their liability on any of Microsoft's claims is that their conduct was not willful.  As a matter of law, a plaintiff is not required to prove willfulness to prevail on a copyright or trademark

12

infringement claim. *See* 17 U.S.C. § 501(a); 15 U.S.C. § 1117(c); Microsoft v. Grey Computer, 910 F. Supp. 1077, 1083, 1086 (D.Md. 1995).

Consequently, Microsoft is entitled to summary judgement on the issue of the Defendants' liability on all of Microsoft's claims.  We will enter judgment in favor of Microsoft with respect to the Defendants' liability.

That conclusion requires us to consider the relief to which Microsoft is entitled.  We need not discuss the merit of Microsoft's request for permanent injunctive relief because the Defendants have already voluntarily provided that relief.[2]  It is clear that Microsoft is entitled to such relief and we will grant its request therefor.  We will proceed to consider Microsoft's entitlement to damages.

The federal statutes upon which Microsoft's claims are based allow a successful plaintiff to choose the method by which the damages will be determined.  A plaintiff may elect to recover actual damages, or opt for an award of specified statutory damages. 15 U.S.C. § 1117(c); 17 U.S.C. § 504(c)91).  The Copyright Act provides for statutory damages of up to $30,000.00

---

2.  On page 2 of their opposition brief, the Defendants state that they "do not dispute Microsoft's request for a permanent injunction to prevent any 'future violations of Microsoft's trademarks.' ...  At the inception of this case, Defendants agreed to that remedy immediately."

for each copyright infringed, and as much as $150,000.00 for each
<u>willful</u> infringement. 17 U.S.C. § 504(c).  The corresponding
figures in the Lanham Act allow for an award of $100,000.00 for
each trademark infringed, enhanced up to $1,000,000.00 for each
willful infringement. 15 U.S.C. § 1117(c).

As noted above, Microsoft has requested an award of
$430,000.00 in damages.  Microsoft bases that figure upon a
$100,000.00 award for each of its four trademarks infringed, and
$30,000.00 for the single copyright at issue.  Those figures are
the maximum amounts set forth in the governing statutes for non-
willful violations.  The Defendants contend that no award of
damages should be made without conducting a hearing.

The United States Supreme Court has held that "the Seventh
Amendment provides a right to a jury trial, which includes a
right to a jury determination of the amount of statutory damages"
available pursuant to the Copyright Act. Feltner v. Columbia
Pictures Television, Inc., 523 U.S. 340, 342, 118 S. Ct. 1279,
1282 (1998).  The court reached the same conclusion with respect
to statutory damages awarded for the infringement of a trademark.
Dairy Queen v. Wood, 369 U.S. 469, 477-79, 82 S.Ct. 894, 8
L.Ed.2d 44 (1962)(trademark); *see also* Alcan Intern. Ltd. v. S.A.
Day Mfg. Co., Inc., 179 F.R.D. 398 (W.D.N.Y. 1998).

By order dated January 31, 2005, we placed this case on our December, 2005, Trial List.  The matter will remain on that list with the trial being limited to the amount of damages to be awarded.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    Microsoft's motion (Document 16) for summary judgment is granted in part and denied in part as provided in paragraphs 2 through 4 of this order.

2.    The Clerk of Court shall enter judgment in favor of Microsoft and against Master Computer, Inc., and Sung Kao, a/k/a Rick Kao, on all of Microsoft's claims.

3.    Defendants Master Computer, Inc., and Sung Kao (a/k/a Rick Kao), their agents, servants, employees, representatives, successors and assigns, and all persons or entities acting in concert or in participation with them, shall be and hereby are permanently enjoined and restrained from:
a) imitating, copying, or making any other infringing use or infringing distribution of software programs, components, end user license agreements or items protected by Microsoft's registered trademarks and service mark including but not limited to the following Trademark or Service Mark Registration Numbers:

(1) 1,256,083 ("Microsoft");

(2) 1,200,236 ("Microsoft");

(3) 1,872,264 ("Windows");

(4) 1,815,350 (Colored Windows Flag); and

(5) 1,816,354 (Windows Flag Logo);

or of the software programs, components, end user license agreements, items or things protected by the following Certificate of Copyright Registration No.: TX 5-036-267 (Microsoft Windows 2000 Professional);

b) manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any software program, component, end user license agreement, item or thing bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks or service mark including but not limited to the Trademark and Service Mark Registration numbers listed in paragraph a) above;

c) using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks or service mark, including but not limited to the Trademark and Service Mark Registration numbers

16

listed in paragraph a) above, in connection with the manufacture, distribution, offering for distribution, sale, offering for sale, advertisement, promotion, or display of any software, component, end user license agreement, item or thing not authorized or licensed by Microsoft;

d) using any false designation of origin or false description which can or is likely to lead the trade, the public, or individuals erroneously to believe that any software, component, end user license agreement, item, or thing has been manufactured, produced, distributed, offered for distribution, advertised, promoted, displayed, licensed, sponsored, approved by or for Microsoft, when such is not true;

e) using the names, logos, or other variations thereof, of any Microsoft copyright or trademark-protected software program in any of Defendants' trade or corporate names;

f) engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service marks, or copyrights, or of Microsoft's rights in, or right to use or to exploit these trademarks, service

mark, or copyrights; or constituting any dilution of

Microsoft's name, reputation, or goodwill; and

g) assisting, aiding, or abetting any other person or

business entity in engaging in or performing any of the

activities referred to in paragraphs a) through f)

above.

4.    This matter remains on the December, 2005, Trial List,

for a jury to determine the amount of statutory damages

to which Microsoft is entitled.


                                    s/Malcolm Muir
                                    MUIR, U. S. District Judge

MM:ga